

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 08 2016  9.51am

Stephan Harris, Clerk
Cheyenne

ORIGINAL

# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| GEORGE JAMES | ) |
| | ) Case Number: 16-cv-23-F |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) |
| | ) |
| COLLECTIONS ACQUISITION COMPANY, | ) |
| INC., d/b/a PAYLIANCE(TM), | ) |
| JOHN DOE 1 through 100, | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| DEFENDANTS. | ) |

## COMPLAINT

Comes now the Plaintiff, George James, pro se, and for his Complaint states:

## INTRODUCTION

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt.

George James (hereinafter "Plaintiff"), an individual, on this 7th day of December, 2015, brings this Complaint against: Collections Acquisition Company, Inc., d/b/a/ Payliance(TM) (hereinafter "PAYLIANCE") and John Doe 1-100.

Plaintiff seeks statutory, actual, and punitive damages, as well as attorney fees and costs for this litigation, for violations of the *Fair Debt Collection Practices Act 15 U.S.C. §1692 et seq.* (hereinafter "FDCPA"), *Wyoming Consumer Protection Act W.S. § 40-12-101 et seq.* (hereinafter "WCPA"), *Wyoming Collection Agency Act W.S. § 33-11-101 et seq.* (hereinafter

"WCAA"), actual damages, and emotional distress.

## PARTIES

1. Plaintiff as a natural person residing in the city of Cheyenne, Laramie County, Wyoming and was a "consumer" at all times as alleged in this Complaint, in so far as consumer is defined by *15 U.S.C. § 1692(a)(3)*.[1]

2. Defendants PAYLIANCE and John Doe 1-100, with a primary place of business located at 3 Easton Oval, 2nd Floor, Columbus, OH 43219, may be served upon their registered agent at Collections Acquisition Company, Inc., c/o/ Corporation Service Company, 1821 Logan Avenue, Cheyenne, WY 82001, were acting as "debt collectors" in so far as "debt collector" is defined by *15 U.S.C. § 1692(a)(6)* and were attempting to collect a "debt" in so far as "debt" is defined by *15 U.S.C. § 1692(a)(5)*, which was allegedly due a "creditor" in so far as "creditor" is defined by *15 U.S.C. § 1692(a)(4)*.

3. The specific employees of Defendants PAYLIANCE listed as John Doe 1 through 100 in this Complaint, that were assigned Plaintiff's file/case/account and/or that communicated with the Plaintiff about the subject matter in this Complaint, are unknown at this time and will be named and joined as parties once discovery has been completed.[2]

## JURISDICTION AND VENUE

---

[1] For the purposes of the WCAA, the Plaintiff meets the definition of a consumer.

[2] "An employee cannot escape liability under the FDCPA because he was merely following established office procedure with no intent to violate the FDCPA." *Newman* v. *Checkrite California,* 912 F. Supp. 1354(E.D.Ca. 1995); *West* v. *Costen,* 558 F. Supp. 564 (W.D.Va. 1983).*Drennan* v. *VanRu Credit Corp.,* 950 F. Supp. 858 (N.D.Ill. 1996). *Ditty* v. *Checkrite, Ltd., Inc.,* 973 F. Supp. 1320 (D. Utah 1997). *Russell* v. *Goldman Roth Acquisitions, LLC* (No. 110-cv-1224; March 12, 2012; Maloney, 1.). *Blakemore* v. *Pekay,* 895 *F. Supp.* 972, 977 (N.D. Ill.1995).

4. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (3).

5. Jurisdiction is conferred on this Court by the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1367. This honorable Court is a Court of competent jurisdiction which has original jurisdiction over Plaintiff's federal claims and is authorized by the FDCPA to hear and adjudicate Plaintiffs claims against Defendants.

6. As Plaintiff's state claim is related to Plaintiff's federal claims, are inextricably entwined and arise out of a common nucleus of related facts, this Court has supplemental jurisdiction to hear Plaintiff state claim against Defendants.

7. Plaintiff state claim is related to Plaintiff federal claims as those claims form part of the same case of controversy under Article III of the United States Constitution.

8. Plaintiff state claim is not complex or novel and is straightforward.

9. Declaratory relief is available pursuant to 28 U.S.C. § 2201 and § 2202.

10. Declaratory judgment is just and proper in this case, as declaratory judgment will send the appropriate message to the Defendants that their conduct will continue to subject them to future damages.

11. Venue is proper as all alleged conduct by Defendants took place in Cheyenne, Wyoming, while the Plaintiff was residing in Cheyenne, Wyoming, and/or the Defendants have availed themselves of jurisdiction in this venue by conducting business therein.

## RELEVANT PRECEDENT & STATUTORY STRUCTURE OF THE FDCPA

12. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (11).

13. The FDCPA is a strict liability statute that covers both intentional and unintentional

violations.[3]

14. Courts are to employ and use the "least sophisticated consumer" standard when analyzing FDCPA claims, and whether conduct violates the FDCPA is to be determined by analyzing the conduct from the perspective of the least sophisticated consumer.[4]

15. A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 *US* C. §*1692f*.[5]

16. The FDCPA imposes three broad prohibitions. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.2002). First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. "Violation of these standards subjects debt collectors to civil liability ... or administrative enforcement by the Federal Trade Commission." *Johnson*, 305 F.3d at 1117.[6]

17. A debt collector violates the FDCPA if they attempt to collect or collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such

---

[3] *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002); *Strand* v. *Diversified Collection Serv., Inc.*, 380 F.3d 316,317 (8th Cir. 2004).
[4] *Fouts v. EXPRESS RECOVERY SERVICES, INC.*, No. 14-4046 (10th Cir. Feb. 3, 2015); *Freyermuth* v. *Credit Bureau Servs Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (quoting *Duffy* v. *Landberg*, 215 F.3d 871, 873 (8th Cir.2000).
[5] "Statutory proscriptions using general terms such as unfairness are to be given effect by considering public values beyond simply those enshrined in the letter or encompassed in the spirit of the statute." *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233 S. Ct. (1972).
[6] See also *James v. Wadas*, 724 F.3d 1312 (10th Cir. 2013) and 15 U.S.C. §§ 1692k, 16921.

amount is expressly authorized by the agreement creating the debt or permitted by law. *15 U.S.C. § 1692(1)*.

18. The bona fide error defense is limited to clerical errors. *Picht* v. *Jon R. Hawks,* Ltd., 236, 3d 446,451 (8th Cir. 2001).[7]

19. Under the FDCPA, *15 U.S.C. §1692k(a)(2),* any debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for statutory damages up to $1,000.

20. Under the FDCPA, 15 *US* C. § *1692k(a)(1),* any debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for actual damages.

21. Under the FDCPA, 15 *US* C. *§1692k(a)(3),* a Plaintiff who is successful in an FDCPA action is entitled to attorney fees and costs for the litigation, as determined by the court.

22. WCAA, Chapter 4, Section 6 of the Rules & Regulations of the Collection Agency Board creates a state cause of action and private right of action for damages for conduct that violates the provisions of the "Fair Debt Collection Practices Act (FDCPA) as issued and amended as of October 13, 2006, and contained in Title I of the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.)."

23. That the Defendants violations of the FDCPA are per se violations of the WCAA.

---

[7] This case presents the question whether the "bona fide error" defense applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA. "We conclude it does not." *Jerman v.Carlisle, McNellie, Rini, Kramer & Ulnch LPA,* No. 08-1200,130 S. Ct. 1605; 176 LEd. 2D 519; 2010 U.S. Lexis 3480; (April 21, 2010).

## FACTS COMMON TO ALL COUNTS

24. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (23).

25. Based upon information and belief, PAYLIANCE collects or attempts to collect debts due or asserted to be due for Papa Johns for their stores in Wyoming.

26. On or about November 12, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

27. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

28. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

29. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff..

30. On or about November 20, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

31. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

32. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

33. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

34. On or about November 20, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

35. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

36. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

37. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

38. On or about December 11, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

39. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

40. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

41. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to

Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

42. On or about December 11, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

43. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

44. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

45. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

46. On or about December 18, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

47. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

48. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

49. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge

in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

50. On or about December 18, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

51. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

52. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

53. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

54. On or about December 23, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

55. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

56. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

57. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

58. On or about December 23, 2015, the Defendant, having no permission granted from Plaintiff, initiated an ACH from Plaintiff's checking account number ending in 3606.

59. As Plaintiff had provided no permission to Defendant, to initiate such debit from his account, Plaintiff's account did not have sufficient funds to cover the ACH, which Plaintiff had not given permission to Defendant to initiate.

60. As Plaintiff's account did not have sufficient funds, Defendant's debit of Plaintiff's account caused Plaintiff's account to generate an overdraft charge of $30.

61. The Defendant's debit of Plaintiff's account, which Plaintiff had given no permission to Defendant to make or attempt to make, is the direct and proximate cause of the overdraft charge in the amount of $30 being assessed by Meridian Trust FCU against Plaintiff.

62. On or about December 17, 2015 PAYLIANCE mailed or caused to be mailed, under the direct authority and supervision of PAYLIANCE, voluntarily, a communication to Plaintiff alleging money owed for an account placed with PAYLIANCE for collection, account number 2205437 (See Exhibit 1). The communication demanded payment for the face value of the check, "Service Fee: $30".

63. On the date of January 4, 2016, and in response to PAYLIANCE's communication on or about December 17, 2015, Plaintiff notified PAYLIANCE by certified mail, Plaintiff requested "validation" and "refuse to pay this debt" (See Exhibit 2).

64. On or about January 13, 2015, PAYLIANCE mailed or caused to be mailed, under the direct authority and supervision of PAYLIANCE, voluntarily, a communication to Plaintiff, in direct response to Plaintiff's January 4, 2016 communication. (See Exhibit 3).

## COUNT 1 FDCPA VIOLATIONS, AS TO DEFENDANTS PAYLIANCE AND JOHN DOE THROUGH 100

65. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (64). The Defendants violation of the FDCPA include but are not limited to the following:

66. Defendant PAYLIANCE, on or about the dates of November 11, 2015 through January 13, 2016, violated the FDCPA, by representing themselves to Plaintiff as collection agency authorized to conduct the business of a collection agency in the state of Wyoming. However, Defendants were not licensed to conduct the business of a collection agency in the state of Wyoming during their communications with Plaintiff. As such, PAYLIANCE's conduct violated 15 U.S.C. § 1692d, 1692e(5), 1692e(10), and 1692f.

67. Defendant PAYLIANCE, on or about December 17, 2015 and January 17, 2016, violated the FDCPA, by mailing or causing to be mailed a written communication to Plaintiff that attempts to collect an amount that is not expressly authorized by agreement or law, "Service Fee: $30". As such, PAYLIANCE's conduct violated 15 U.S.C. § 1692e(2), 1692f, and 1692f(1).

68. Defendants John Doe 1-100, on or about December 17, 2015 and January 17, 2016, violated the FDCPA, by mailing or causing to be mailed a written communication to Plaintiff that attempts to collect an amount that is not expressly authorized by agreement or law, "Service Fee: $30". As such John Doe 1-100's conduct violated 15 U.S.C. § 1692e(2), 1692f, and 1692f(1).

69. Defendant PAYLIANCE, on or about November 11, 2015, November 20, 2015, November 25, 2015, December 11, 2015, December 18, 2015, and December 23 2015, violated

the FDCPA, by initiation of unauthorized ACH withdrawals from Plaintiff's checking account that attempts to collect an amount that is not expressly authorized by agreement or law. As such, PAYLIANCE's conduct violated 15 U.S.C. § 1692e(2), 1692f, and 1692f(1).[8]

70. Defendant PAYLIANCE, on or about January 13, 2016, violated the FDCPA, by demanding payment after receiving Plaintiff's lawfully placed cease communications directive.[9] As such, PAYLIANCE's conduct violated 15 U.S.C. § 1692c(c).

71. Defendant PAYLIANCE's violation of Wyoming state law, in regards to engaging in deceptive practices and engaging in the business of a collection agency without a license, are a violation of the FDCPA. A violation of state law constitutes a violation of the FDCPA, because the state law violation is a violation which involves false, deceptive, or misleading representations. *See, Carlson vs. First Revenue Assurance, 359 F3d. 1015 (8th Cir. 2004).*

72. As a result of the foregoing violations of the FDCPA, Plaintiffs are entitled to actual damages, statutory damages in an amount up to $1,000.00, reasonable attorney's fees, and costs pursuant to 15 U.S.C. § 1692k.

## COUNT 2 VIOLATIONS OF WCPA

---

[8] If a person chooses to electronically collect the dishonored check collection fee, the collection must adhere to: W.S. 33-11-101 through 116 - Wyoming Collection Agencies Act, W.S. 1-1-115- Wyoming Civil Liability for Unpaid Checks, Fair Debt Collection Practices Act, Regulation E of the Federal Reserve System, and NACHA Operating Rules.

[9] "A consumer's written demand to the collector that it verify the debt pursuant to § 1692g and otherwise cease all other communication effectively invoked the § 1692 c(c)'s cease communication remedy and did not improperly attempt to "have it both ways," and the collector's subsequent communications other than to provide verification, comprised of an additional dun and affidavits of forgery for the consumer to sign, violated § 1692c(c)." See, Johnson v. Equifax Risk Mgmt. Servs., 2004 WL 540459 (S.D.N.Y. Mar 17, 2004).

73. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (72). The Defendants violation of the WCPA include but are not limited to the following:

74. Defendant PAYLIANCE's communication with the Plaintiff, on or about December 11, 2015 through January 13, 2016 was made while illegally conducting the business of a collection agency and a debt collector in the state of Wyoming.

75. Plaintiff's validation communication gave PAYLIANCE the statutorily required notice in writing to cure the unlawful deceptive trade practices.

76. Defendant PAYLIANCE recklessly and willfully chose to demand payment for alleged debts while illegally conducting the business of a collection agency and a debt collector in the state of Wyoming.

77. Defendant PAYLIANCE knew that they were required to be licensed by the state of Wyoming to conduct the business of a collection agency in the state of Wyoming. As a result of Defendant PAYLIANCE's violation of the WCPA, Plaintiffs are entitled to actual damages pursuant to Wyoming Statutes § 40-12-108.

## COUNT 3 VIOLATIONS OF THE WCAA

78. Plaintiff incorporates by reference and re-alleges paragraphs (1) through (77). The Defendants violation of the WCAA include but are not limited to the following:

79. Defendant PAYLIANCE's communication with the Plaintiffs, on or about December 11, 2015 through January 13, 2016 was made while illegally conducting the business of a collection agency and a debt collector in the state of Wyoming.

80. Defendant PAYLIANCE, on or about November 11, 2015, November 20, 2015,

November 25, 2015, December 11, 2015, December 18, 2015, and December 23 2015, violated the FDCPA, by initiation of unauthorized ACH withdrawals from Plaintiff's checking account that attempts to collect an amount that is not expressly authorized by agreement or law.

81. Defendant PAYLIANCE recklessly and willfully chose to demand payment for alleged debts while illegally conducting the business of a collection agency and a debt collector in the state of Wyoming.

82. Defendant PAYLIANCE violated Chapter 4 Section 6 of the Collection Agency Board Rules and Regulations as detailed in Count 1 FDCPA Violations.

83. John and/or Jane Doe violated Chapter 4 Section 6 of the Collection Agency Board Rules and Regulations as detailed in Count 1 FDCPA Violations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, George James, respectfully requests this Honorable Court find in his favor and enter judgment against the Defendant for the following:

a. Declaratory judgment ruling and finding PAYLIANCE violated the Wyoming Consumer Protection Act, Wyoming Statute § 40-12-101 *et seq*. specifically, engaging in deceptive trade practices in the state of Wyoming;

b. Declaratory judgment ruling and finding PAYLIANCE violated Wyoming Collection Agency Act, Wyoming Statute § 33-11-101 *et seq*. specifically, operating as a collection agency in the state of Wyoming without a license issued by the Collection Agency Board.

c. Statutory damages of $1,000 per Defendant, pursuant to FDCPA 15 U.S.C. § 1692k;

d. Damages of $1,000 per Defendant, pursuant to Chapter 4 Section 6 of the Rules and

Regulations of the Collection Agency Board;

    e.  Actual damages of $5,000, and up to an amount proven at trial, pursuant to FDCPA 15

U.S.C. § 1692k for emotional distress;

    f.  Actual damages of $270, and up to an amount proven at trial, pursuant to FDCPA 15

U.S.C. § 1692k for overdraft fees;

    a.  Other punitive damages in an amount to be determined by the jury;

    b.  Court costs, service costs, and reasonable attorneys fees;

    c.  Such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

       PLEASE TAKE NOTICE that Plaintiff, George James hereby demands a trial by jury of all triable issues of fact in the above-captioned case.

Date: February 8, 2016

George James
3422 Cribbon Avenue
Cheyenne, Wyoming 82001
gjames1@gmail.com
307-635-3119

Collections Acquisition Company, Inc. d/b/a

# Payliance™
**(866) 945-8964**

Hours: 8:00 AM – 7:00 PM EST Monday – Thursday
8:00 AM – 5:00 PM EST Friday

December 17, 2015

**MAKE CHECKS PAYABLE TO:**

**Payliance**
3 Easton Oval, Suite 210
Columbus, OH 43219-6011

8207962

George R James
3422 Cribbon Ave
Cheyenne WY 82001-1077

| | | |
|---|---|---|
| ☐Visa ☐Master Card ☐Money Order ☐Check | | |
| Card # | Exp. Date | |
| Signature | | 3 DIGIT SECURITY ODE (on back of card) |
| Amount Due: **$87.02** | Amount of Payment: | |

**Account #: 2205437**

***To ensure proper credit: Detach Upper Portion And Return With Payment***

| Creditor to whom debt is owed: | Check or ACH # | Check Date | Face Amount | Service Fee | Total Due |
|---|---|---|---|---|---|
| Papa Johns Jlm Enterprise | 1761 | 12/05/15 | $57.02 | $30.00 | $87.02 |

The check/ACH you wrote or authorized to the creditor listed above has been returned by your bank. The creditor has hired our company to help collect the Total Due Amount. Please detach the top portion of this notice, enclose your check or money order payable to Payliance or provide your credit card information for the Total Due Amount and return it to us in the envelope provided. Payliance will handle remittance to the creditor for you.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

If payment has been made, you should disregard this notice.

Payliance
JRDSECK0213

**NOTICE: SEE REVERSE SIDE FOR PAYMENT OPTIONS
AND OTHER IMPORTANT INFORMATION**

Exhibit 1

January 4, 2016

Dear Payliance,;

In response to your letters that has dated December 17, 2015, and your account number
2205437, I requests that you send me validation and I refuse to pay this debt because of reasons.

Thank you,
George James

Exhibit 2

877-365-7422 *office*
614-259-2059 *fax*

3 Easton Oval
Columbus, OH 43219

payliance.com

 Payliance

Wednesday, January 13, 2016

GEORGE JAMES
3422 CRIBBON AVE
CHEYENNE, WY 82001

Account #2205437
PAPA JOHNS JLM ENTERPRISES #2395 - check #1761
Balance Due: $87.02 ($57.02 Face and $30.00 Fee)

GEORGE JAMES,

Payliance is in receipt of your letter requesting **Validation/Verification** of the outstanding balance on the unpaid check described below.

Check #1761 dated 12/5/2015 made payable to PAPA JOHNS JLM ENTERPRISES #2395 in the amount of $57.02 was returned to our merchant by your bank due to the account being closed. When the check was returned it also incurred a $30.00 returned check fee and any applicable bank fees to the outstanding face amount of the returned check.

Please be advised that PAPA JOHNS JLM ENTERPRISES #2395 is a current merchant with Payliance authorizing Payliance to collect on returned checks made payable to PAPA JOHNS JLM ENTERPRISES #2395. Payliance has provided PAPA JOHNS JLM ENTERPRISES #2395 with a Payliance **Check Payment Terms** sticker to be posted at the **Point-of-Sale**. Below you will find the conditions of the **Check Payment Terms**; also attached you will find an image of the outstanding returned check for your review.

- **Check Payment Terms:** In consideration of Merchant accepting customer's payment by check and other good and valuable consideration, Customer agrees that if any check is returned unpaid for any reason, customer expressly authorizes Merchant or it s processing agent or assignee to electronically collect or create a demand draft to collect, the face amount of the check and a $50 return check service fee as well as any applicable bank fees and sales tax. Customer's payment by check is Customer's express acceptance of thes Terms and shall serve as Customer's authorization for the electronic collection and/or issuance of a demand draft on Customer's account.

**\*\* This communication is sent to you from a debt collector in an attempt to collect a debt. Any information obtained will be used for that purpose.\*\***

Exhibit 3